**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Raymond Frederick EDWARDS, Thomas Albert Roker, Richard George Edwards, Matthew Dennis McDermott, James Randall Edwards, Defendants–Appellants.**

No. 90–5497.

United States Court of Appeals,
Eleventh Circuit.

Aug. 14, 1992.

Carlos M. Llorente, Ft. Lauderdale, Fla., for defendant-appellant Raymond Edwards.

Peter Raber, Miami, Fla., for defendant-appellant Thomas Roker.

Mary Catherine Bonner, Ft. Lauderdale, Fla., for defendants-appellants Richard Edwards and Matthew M. McDermott.

Philip J. Horowitz, Miami, Fla., for defendant-appellant James Edwards.

Neil Karadbil, Asst. U.S. Atty., West Palm Beach, Fla., Linda Collins Hertz, Asst. U.S. Atty., Dawn Bowen, Miami, Fla., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and BROWN,[*] Senior Circuit Judge.

BAILEY BROWN, Senior Circuit Judge:

Thomas Roker, Matthew McDermott, Raymond Edwards, James Edwards, and Richard Edwards appeal their convictions on charges related to the importation of cocaine. After careful consideration of all assignments of error, we conclude that Roker's assertion that the district court erred by failing to instruct the jury on the statute of limitations is the only claim requiring detailed discussion. For the follow-ing reasons, we reverse Roker's convictions for the substantive offenses occurring in 1983 and remand for a new trial. We affirm all other convictions.

## I. FACTS

In 1983, Appellant Roker and a number of accomplices who are not parties in this case imported 115 kilograms of cocaine and 300 pounds of marijuana from Colombia by way of the Bahamas. In February 1984, Roker participated in the importation of 290 kilograms of cocaine and, with the assistance of Appellant Raymond Edwards and others, offloaded the cocaine at Raymond Edwards' Juno Beach, Florida, residence. In September 1985, Roker and his accomplices used Appellant Richard Edwards' boat to obtain 190 kilograms of cocaine from the Bahamas. Later, they met Richard Edwards and Appellant McDermott, who brought the cocaine to Florida and stored it in Raymond Edwards' living room for several days until it was transported piecemeal to Miami. In November 1985, a similar transaction occurred, involving 390 kilograms of cocaine taken from Colombia and transported to the Bahamas where Appellant James Edwards, Richard Edwards, and McDermott later retrieved it and took it to Florida.

In 1987, a federal grand jury in Oklahoma returned an indictment against four of Roker's associates for narcotics offenses committed in Oklahoma from 1980 until July 1987. The Oklahoma defendants agreed to cooperate with drug-enforcement officials in Florida.

## II. PROCEDURAL HISTORY

On December 13, 1988, a grand jury returned a thirteen-count indictment in the United States District Court for the Southern District of Florida charging Appellants and their co-defendants with conspiracy to import cocaine, importation of cocaine, and possession with intent to distribute. Counts II and III charged Roker, along

---

[*] Honorable Bailey Brown, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designa-tion.

with accomplices who are not parties on appeal, with importation and possession with intent to distribute cocaine "[b]etween on or about December 15, 1983 and December 31, 1983." Six of the co-defendants pleaded guilty, and three remain fugitives.

At arraignment, a magistrate judge denied Appellants' motion for production of polygraph examinations alleged to have been given to Government witnesses. On May 26, 1989, the district court affirmed the magistrate judge's ruling. The court also denied Appellants' requests for production of FBI reports and presentence reports on the Government witnesses. On March 12, 1990, a jury trial commenced for the five Appellants and a co-defendant who is not a party on appeal.

The Government's chief witnesses at trial were co-defendants named in the Florida indictment who were not on trial and others named in companion indictments in Oklahoma, Utah, and California. When the Government rested its case, Roker's counsel, asserting that Counts II and III were barred by the statute of limitations, moved for judgment of acquittal on those counts. *See* Fed.R.Crim.P. 29. Roker's counsel made the following argument with respect to the counts charging Roker with importation and possession with intent to distribute in 1983:

> [T]here seems to be a discrepancy as to when the overt act, allegedly between December 15, 1983, and December 31st, 1983, took place in Counts Two and Three.
> There has been testimony that this particular act took place in December[;] there has been testimony that this particular act took place in September or October of 1983[;] there has been testimony that, "I really don't know when it took place, probably December."
> But more importantly, your Honor, Government's Exhibit Number 11 [the Oklahoma indictment], which alleges that very same act, the very same quantity, the very same facts in Tulsa, Oklahoma, to which numerous of these witnesses have pled guilty.... That act is alleged to have taken place in November 1983.

> ... I respectfully request that a directed judgment of acquittal be entered as to both Counts Two and ... Three as to Mr. Roker because of the fact it is beyond the statute of limitations....

In response to defense counsel's contentions, the prosecutor argued, "The date that is contained within the Oklahoma indictment is obviously in error. This court—this jury is not bound by that date. The defense certainly has a jury argument to make about that particular aspect...." After additional argument by the prosecutor, the court denied all motions for judgment of acquittal.

During the charge conference, after the court read to counsel the proposed jury instructions, Roker's counsel again addressed the statute of limitations issue with respect to Counts II and III. The following exchange ensued:

> Defense Counsel:
>> I am still ... hung up on Counts Two and Three as to Mr. Roker.... If the jury finds that this alleged activity in Counts Two and Three took place prior to December 13, 1988, then it is beyond the statute of limitations, and they [sic] should find Mr. Roker not guilty of each.
>> ... I have never been in a position to ask for an interrogatory jury instruction in a criminal case, but that concerns me....
>> I don't know that I want to propose— If you find—let's see, I guess Mr. Roker is the only one charged in Counts Two and Three.
>> If he is—
> The Court:
>> He is.
> Defense Counsel:
>> —Found to have committed that offense prior to December the 13th, 1983, then he should be found not guilty, because it is beyond the statute of limitations....
> Prosecutor:
>> ... What [defense counsel] is addressing is a matter of law.... That ruling is for the court to make pursuant to

his motion to dismiss ... on the basis of the statute of limitations....

He is not entitled to a special verdict form, or special verdict instructions from this jury indicating that he should be found not guilty of the offense if they find that the whole transaction took place prior to that time....

The Court:

Mr. Colton [defense counsel], you would be requesting some type of a special interrogatory verdict or question? Special interrogatory in the verdict? .

Defense Counsel:

Just that statement, Judge.[1]

The Court:

All right. I will deny that request.

After giving the jury charge, which did not include an instruction on the statute of limitations, the court asked counsel whether they had additional objections to the instructions. Roker's counsel responded, "None that have not already been discussed with the court."

The jury acquitted Raymond Edwards of one importation charge and returned guilty verdicts against Appellants on all other charges. Appellants filed timely notices of appeal.

## III. DISCUSSION

A. *Claims of Error by All Appellants*

In addition to challenging the sufficiency of the evidence to support their convictions, Appellants contend that the district court erred by (1) failing to order the production of polygraph, FBI, and presentence reports of Government witnesses; (2) admitting a co-conspirators' out-of-court statements identifying Raymond Edwards as owner of the house at which drugs were offloaded; (3) restricting cross-examination about collateral crimes of Government witnesses; and (4) denying the jury's request to read portions of the trial transcript. The Government counters that the district court

did not err in its rulings before, during, or after the trial.

1. Polygraph, FBI, and Presentence Reports

After carefully reviewing the record, we conclude that the district court did not err in its pre-trial rulings. In denying the request for the production of polygraph results, the court followed the law of the circuit as it stood on May 26, 1989, the date of the ruling. After we enounced, on September 28, 1989, in *United States v. Piccinonna,* 885 F.2d 1529 (11th Cir.1989) (en banc), that polygraph results may be admitted "when used to impeach or corroborate the testimony of a witness at trial," *id.* at 1536, Appellants failed to renew at trial their motion to compel production of polygraph results. Moreover, nothing in the record establishes that the Government, in fact, administered polygraph examinations. In any event, the circumstances do not warrant retroactive application of *Piccinonna. See United States v. Ramos,* 933 F.2d 968, 969 (11th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1269, 117 L.Ed.2d 496 (1992).

Furthermore, because nothing in the record indicates that the Government's failure to produce the FBI and presentence reports prejudiced Appellants' defense, we conclude that the court did not commit reversible error by denying the request for discovery of the reports. We, therefore, reject Appellants' claims of error as they relate to the court's pre-trial rulings.

2. Admission of Out-of-Court Statements by a Co–Conspirator .

Co-conspirators' statements made "during the course and in furtherance of the conspiracy" are not hearsay. Fed.R.Evid. 801(d)(2)(E). In the instant case, independent evidence revealed that (1) during the time alleged in the indictment, Appellants were involved in a conspiracy with the declarant of the challenged statements and (2) the challenged statements were made

1. Apparently, defense counsel was referring here to the jury instruction he suggested: "If you find ... [Roker] to have committed that

offense prior to December the 13th, 1983, then he should be found not guilty, because it is beyond the statute of limitations."

during the course of the conspiracy. Moreover, under our liberal standard for determining whether statements further the interests of a conspiracy, *see United States v. Turner,* 871 F.2d 1574, 1581 (11th Cir.), *cert. denied,* 493 U.S. 997, 110 S.Ct. 552, 107 L.Ed.2d 548 (1989), there is sufficient proof to support the district court's determination that the statements were made in furtherance of the conspiracy. Therefore, the admission of the challenged statements was not error.

3. Restriction of Cross–Examination

■ During cross-examination, the district court curtailed Appellants' attempts to elicit testimony about Government witnesses' prior drug dealings and the involvement of one witness in the murder of a would-be informant. We review for abuse of discretion a district court's exclusion of testimony about "collateral crimes impinging solely on a witness's credibility and bearing no relation to the subject matter of his or her direct examination." *United States v. Holman,* 680 F.2d 1340, 1350 (11th Cir.1982). Because the jury in the instant case had before it sufficient evidence from which it could draw reasonable inferences about the witnesses' credibility and because the witnesses' potential for bias is clear on the record before this court, *see United States v. Van Dorn,* 925 F.2d 1331, 1335 (11th Cir.1991), we must reject Appellants' contention that the court abused its discretion by curtailing this cross-examination.

4. Jury's Request to Read Trial Transcripts

■ A district court has broad discretion in determining whether to grant or deny a jury's request to read a portion of the trial transcript. *United States v. Loyd,* 743 F.2d 1555, 1567 (11th Cir.1984). Appellants' trial took several days and involved numerous defendants. In a case such as this one, allowing a jury to read requested portions of the transcript could easily result in jurors' placing undue weight on the reviewed testimony. *See United States v. Schmitt,* 748 F.2d 249, 256 (5th Cir.1984), *cert. denied,* 471 U.S. 1104, 105 S.Ct. 2333, 85 L.Ed.2d 850 (1985).

The district court did not abuse its discretion by denying the jury's request.

### B. *Roker's Statute of Limitations Defense*

Relying on the companion indictment in Oklahoma and the conflicting testimony regarding the date of the 1983 offenses, Appellant Roker asserts that the Government did not prove conclusively that the offenses alleged in Counts II and III occurred within five years of the indictment. Roker submits that the district court erred by failing to instruct the jury that, unless it found that the Government instituted the prosecution within the limitations period, it must acquit Roker on those counts.

■ The Government contends that Roker made an inadequate request for special instructions and failed to object properly to the instructions before the jury began to deliberate. Therefore, asserts the Government, under Federal Rule of Criminal Procedure 30, Roker is precluded from claiming as error the court's failure to instruct the jury on the statute of limitations.

We disagree with the Government's assessment of whether Roker preserved his claim of error. Rule 30 reads in pertinent part:

> No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

Fed.R.Crim.P. 30. Our predecessor court, in *United States v. Arteaga–Limones,* 529 F.2d 1183 (5th Cir.), *cert. denied,* 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976), determined that the purpose of the above provision is to "provide the trial court an opportunity to correct any error or omission in the charge before the jury begins its deliberations." *Id.* at 1192.

In the instant case, although defense counsel's response to the court's solicitation for objections, if considered in isolation, is not as clear as it might have been, in light of the exchanges at the close of the

Government's case and during the charge conference, defense counsel fairly apprised the court of his request for a charge on the statute of limitations and the grounds for his objection to the failure to give the charge. Moreover, after counsel engaged in extensive discussion of the matter, the court understood that defense counsel had requested that the jury be required to consider the statute-of-limitations issue. Overly technical application of Rule 30 in this case would not serve the purposes of the Rule nor meet the ends of justice. *See United States v. Pool,* 660 F.2d 547, 558 (5th Cir.1981); *United States v. Davis,* 583 F.2d 190, 195 (5th Cir.1978); *United States v. Currens,* 290 F.2d 751, 759 (3d Cir.1961). We conclude that Rule 30 does not bar Roker from assigning as error the court's failure to give the requested instruction.

■ Having determined that Roker adequately brought to the district court's attention his objection to the court's omission of an instruction on the statute of limitations as it applies to Counts II and III, we now turn to whether the court erred in failing to give the requested instruction. Title 18 U.S.C. § 3282 provides: "[N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." The statute begins to run when the crime is complete. *United States v. Coia,* 719 F.2d 1120, 1124 (11th Cir.1983), *cert. denied,* 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984).

In the instant case, the witnesses at trial presented conflicting accounts of when the offenses charged in Counts II and III occurred. Moreover, the Oklahoma indictment, stating that the offenses occurred in November, further supports the view that there was a foundation for Roker's statute-of-limitations defense. Under the circumstances, once the conflicting evidence was presented, the question of whether the Government instituted the prosecution of Counts II and III in a timely manner became an issue for the jury to determine. We find that Roker was entitled to have a properly instructed jury determine whether the 1983 offenses occurred more than five years before the indictment was issued.

As set out by our predecessor court in *United States v. Lewis,* 592 F.2d 1282, 1285 (5th Cir.1979), "It has long been established in this Circuit that it is reversible error to refuse to charge on a defense theory for which there is an evidentiary foundation and which, if believed by the jury, would be legally sufficient to render the accused innocent." Had the jury been properly instructed, it could have found that the 1983 offenses occurred outside of the limitations period. Such a finding would have mandated Roker's acquittal on the charges set forth in Counts II and III. We, therefore, conclude that the district court committed reversible error by failing to instruct the jury on the asserted defense.

### C. Sufficiency of the Evidence

As to the remaining convictions, a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. We find, therefore, that the evidence was sufficient to support the convictions.

### IV. CONCLUSION

We find that the district court's refusal to give an instruction on the statute of limitations. as it applies to charges against Roker in Counts II and III constituted reversible error. All other claims of error are without merit.

For the foregoing reasons, therefore, we affirm the convictions of McDermott, Raymond Edwards, James Edwards, and Richard Edwards on all counts against them. We also affirm Roker's convictions for conspiracy and for the offenses occurring in 1984 and 1985. We reverse Roker's convictions for the substantive offenses occurring in 1983 and remand for a new trial.