[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-14262
Non-Argument Calendar

_____

D.C. Docket No. 1:14-cv-20230-JEM

WILLIAM SUMNER SCOTT,

Plaintiff-Appellant,

versus

STEVEN A. FRANKEL,
Esq.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 3, 2015)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

William Scott, proceeding pro se, appeals the district court's dismissal with prejudice of his suit against Steven Frankel.

This is the third time Scott has tried to convince a federal district court to reverse the Florida Supreme Court's decision to suspend him from the practice of law. See Fla. Bar v. Scott, 39 So. 3d 309 (Fla. 2010), cert. denied, 131 S. Ct. 581 (2010). It is also the third time the district court has dismissed his claims for lack of subject matter jurisdiction based on the Rooker-Feldman doctrine.[1] See Order, Scott v. Florida, No. 11-cv-21242 (S.D. Fla. Aug. 2, 2011), ECF No. 12; Report & Recommendation, Scott v. Frankel, No. 12-cv-23930 (S.D. Fla. June 20, 2013), ECF No. 52. Scott claims to be the victim of a wide-ranging conspiracy to silence his criticism of the United States Commodity Futures Trading Commission. The conspiracy achieved its goals, Scott claims, by involving him in an illegal commodities-trading scheme during which he was tricked into representing clients with conflicting interests. This, he contends, allowed the powers aligned against him to suspend him from the practice of law, which in turn led to the revocation of his Series 3 commodity-trading license. According to Scott, the primary players in the conspiracy are Steven Frankel (who Scott says is "a ruling class member of The Florida Bar and [an] undercover operative of [the] Federal and Florida governments"), Prudential Securities, and the CFTC itself. The conspiracy's

_____

[1] See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486–87, 103 S. Ct. 1303, 1317 (1980); Rooker v. Fid. Trust Co., 263 U.S. 413, 415–16, 44 S. Ct. 149, 150 (1923).

alleged membership grows with every defeat Scott suffers in court; it now also appears to include the Florida Supreme Court (and "its captive Bar") and the district court, among others.

In his complaint in this case, Scott claims that Frankel, acting "under cover of law with intent to cover[ ]up the frauds he committed as a ruling member of the Federal and Florida legal systems . . . wrongfully had [Scott] suspended from the practice of law in Florida."  Scott's two-count complaint therefore seeks a declaration that Frankel violated his First Amendment rights, compensation for the "wrongful taking" of his "right to practice law in Florida," and punitive damages "for the malicious, wanton, willful, reckless, and knowing violation of [Scott's] Constitutional rights under the First, Fourth, and Fifth Amendments."  Those alleged violations, too, stemmed from his bar suspension.  On Frankel's motion, the district court dismissed Scott's case with prejudice, ruling that under the Rooker-Feldman doctrine it lacked subject matter jurisdiction.  This is Scott's appeal.[2]

---

[2] Ordinarily we must construe a pro se litigant's briefs and pleadings liberally.  See Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).  But in this case, although Scott is proceeding pro se and is currently suspended from the practice of law, he is a lawyer with nearly two decades of experience practicing in Florida.  In fact, he remains a member of the Florida bar.  See Fla. R. Prof'l Conduct 3-5.1(e) ("During [a] suspension the respondent shall continue to be a member of The Florida Bar but without the privilege of practicing.").  We therefore do not construe his papers liberally.  See Olivares v. Martin, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977) ("[W]e cannot afford [the appellant] the advantage of the liberal construction of his complaint normally given pro se litigants, because he is a licensed attorney.") (citation omitted); see also Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)

We review de novo the district court's application of the Rooker-Feldman doctrine. Lozman v. City of Riviera Beach, 713 F.3d 1066, 1069 (11th Cir. 2013). Rooker-Feldman is a narrow preclusion doctrine that bars a state court loser from later enlisting a federal district court to reverse his state court loss. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 1521–22 (2005). It arises from the fact that the only federal court empowered to review final state court judgments is the Supreme Court of the United States. 28 U.S.C. § 1257(a); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 486–87, 103 S. Ct. 1303, 1317 (1980); Rooker v. Fid. Trust Co., 263 U.S. 413, 415–16, 44 S. Ct. 149, 150 (1923). District courts, as courts of "original jurisdiction," lack any such appellate jurisdiction over state courts. See id. § 1331.

The Supreme Court has limited Rooker-Feldman to those cases in which (1) the plaintiff was the loser in state court, (2) the plaintiff is complaining of an injury caused by the state court's judgment, (3) the state court's judgment was "rendered before the district court proceedings commenced," and (4) the plaintiff is "inviting district court review and rejection" of the state court's judgment. Exxon Mobil, 544 U.S. at 284, 125 S. Ct. at 1521–22. Further, the doctrine applies only to claims that were actually brought in state court or claims that are "inextricably

(adopting as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981).

4

intertwined" with the state court judgment.  Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009) (quotation marks omitted).  A claim is "inextricably intertwined" with the state court judgment "if it would effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues."  Id. (citations and quotation marks omitted).

Narrow though the doctrine is, Scott's case fits comfortably within its bounds.  See Exxon Mobil, 544 U.S. at 284, 125 S. Ct. at 1521–22.  Scott lost in a state court decision rendered years before he filed his district court complaint.  That complaint would enlist the district court to decide questions "inextricably intertwined" with the decision of the Florida Supreme Court suspending Scott's law license, and to decide those questions in a way that conflicts with that decision.  See Casale, 558 F.3d at 1260.  Scott would prevail under Count I of his complaint only if the district court were to decide that the "taking" of Scott's "right to practice law in Florida" was "wrongful" — in other words, that the Florida Supreme Court had erred when it suspended him.  Count II seeks a declaration that the "successful removal of [Scott] from the roll of attorneys in Florida . . . violated [his] rights secured by the First Amendment to the United States Constitution," along with compensatory and punitive damages for the alleged "violation of [Scott's] Constitutional rights under the First, Fourth, and Fifth Amendments" resulting from the taking of Scott's law license.  Scott could therefore only prevail

5

on Count II if the district court determined that the Florida Supreme Court's holdings were wrong, a determination it lacks jurisdiction to make.[3]

Scott makes two arguments that the district court erred when it dismissed his case. He first contends that the Florida Supreme Court's decision to suspend him was the product of extrinsic fraud. But he cites no authority, and we find none, binding us to recognize an extrinsic-fraud exception to the Rooker-Feldman doctrine.[4]

Scott's second contention of error is that the district court failed to view the facts in the light most favorable to him. But even if that is true, any such failure does not matter. Scott's claims, not the allegations on which he bases them, deprive the district court of subject matter jurisdiction. When the relief a plaintiff seeks is federal district court review of an earlier state court order against him, no set of facts, however favorable, will give the court jurisdiction to consider that relief. See Exxon Mobil, 544 U.S. at 284, 125 S. Ct. at 1521–22 (applying

---

[3] Scott's unsuccessful attempt to plead around Rooker-Feldman in both counts has left them nearly devoid of discernable legal content, but we do not reach the question of whether either of Scott's counts states a claim on which relief could be granted. See Boda v. United States, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983) ("Where dismissal can be based on lack of subject matter jurisdiction and failure to state a claim, the court should dismiss on only the jurisdictional grounds.").

[4] It is true that some of our sister circuits have recognized an extrinsic-fraud exception to Rooker-Feldman. See, e.g., In re Sun Valley Foods Co., 801 F.2d 186, 189 (6th Cir. 1986) ("A federal court may entertain a collateral attack on a state court judgment which is alleged to have been procured through fraud, deception, accident, or mistake.") (quotation marks omitted); Resolute Ins. Co. v. State of N.C., 397 F.2d 586, 589 (4th Cir. 1968) (same). But we have not, and we do not do so now.

Rooker-Feldman to cases where the plaintiff is "inviting district court review and rejection of those judgments"). The district court properly dismissed Scott's claims for lack of subject matter jurisdiction.

Our conclusion, in other words, is the same as it was the last time Scott appealed a Rooker-Feldman dismissal of his claims against Frankel. See Scott v. Frankel, 562 F. App'x 950, 953–54 (11th Cir. 2014) (holding that under Rooker-Feldman the district court properly dismissed Scott's claims, including a damages claim against Frankel "premised on an allegation of extrinsic fraud"). We elect not to consider sanctions for this frivolous appeal under Rule 38 of the Federal Rules of Appellate Procedure, but further frivolous appeals of Rooker-Feldman dismissals of these or related claims will risk subjecting Scott to pay "just damages and single or double costs."[5] See Fed. R. App. P. 38.

We must, however, correct the district court on a point of procedure. The district court determined that "any amendment of [Scott's] Complaint would be futile" and on that basis dismissed the case with prejudice. We sympathize with the district court's efforts to discourage vexatious litigation. But a Rooker-

---

[5] We also remind Scott that our affirmance of the district court's order dismissing his case includes affirmance of the portion of its order providing that "if Scott files another lawsuit in any federal district court that in any manner challenges the decision of the Florida Supreme Court" to suspend his law license, "he must file, along with his complaint, a notice that informs that court of the name and case number of the three cases filed with" the Southern District, and that the "notice should further inform the court that the three actions . . . have been dismissed for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine, and should identify, by docket number and date, those orders of dismissal."

<u>Feldman</u> dismissal is a dismissal for lack of subject matter jurisdiction, and "[a] dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice."  <u>Stalley v. Orlando Reg'l Healthcare Sys.</u>, 524 F.3d 1229, 1232 (11th Cir. 2008); <u>see also</u> <u>Boda v. United States</u>, 698 F.2d 1174, 1177 n.4 (11th Cir. 1983) (dismissal on subject matter jurisdiction grounds "is without prejudice").  The district court has already placed Scott on notice that he will be "at risk of violating Rule 11(b) of the Federal Rules of Civil Procedure" should he file <u>another</u> lawsuit challenging the Florida Supreme Court's decision to suspend him.  Given that we have now twice held that Scott's claims are barred by <u>Rooker</u>-<u>Feldman</u>, he will violate Rule 11 if he amends his pleadings in <u>this</u> case in a further attempt to cajole the district court into reversing the Florida Supreme Court.  <u>See</u> Fed. R. Civ. P. 11(b)(2) (providing that a litigant's signature on a pleading or other paper certifies that "the claims, defenses, and other legal contentions are warranted by existing law or by a <u>nonfrivolous</u> argument for extending, modifying, or reversing existing law or for establishing new law") (emphasis added).

We therefore affirm the dismissal of Scott's complaint and remand with instructions that the district court reenter its dismissal as one without prejudice.

**AFFIRMED IN PART** and **REMANDED IN PART.**